**BEFORE THE**
**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| BIO-LAB, INC., ET AL. | ) | |
|     *Plaintiffs*, | ) | |
|   v. | ) | Court No. 24-00024 |
| UNITED STATES, | ) | |
|     *Defendant*. | ) | |

**COMPLAINT**

  Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation ("Plaintiffs"), by and through their attorneys, allege herein as follows.

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. Plaintiffs contest certain aspects of the U.S. Department of Commerce's ("Commerce") final results of administrative review of the antidumping duty order covering Chlorinated Isocyanurates from the People's Republic of China, published in the *Federal Register* on January 4, 2024. *See Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 455 (Jan. 4, 2024) ("*Final Results*") and accompanying Issues and Decision Memorandum ("*Final IDM*").

## JURISDICTION

2.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(c) because this action contests the final results of an administrative review pursuant to 19 U.S.C. § 1675 and is therefore reviewable pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii).

## TIMELINESS OF ACTION

3.  Commerce's *Final Results* were published in the *Federal Register* on January 4, 2024. Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I), Plaintiffs commenced this action by timely filing a Summons with this Court on February 2, 2024, which is within 30 days after the date the *Final Determination* was published in the *Federal Register*. Plaintiffs now are timely filing the Complaint within thirty days after filing of the Summons. Accordingly, this action is timely in accordance with 28 U.S.C. § 2636(c) and within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and United States Court of International Trade Rule 3(a)(2).

## STANDING

4.  The individual plaintiffs, Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation, are domestic manufacturers and wholesalers of Chlorinated Isocyanurates ("Isos"), the domestic like product that is covered by the underlying antidumping duty order. Plaintiffs were petitioners in the underlying antidumping duty investigation and interested parties in the administrative review that is subject to this appeal. Plaintiffs also requested the administrative review that is subject to this appeal and actively participated in that proceeding by, for example, submitting factual information and legal argument concerning the appropriate surrogate country and surrogate values, as well as case and rebuttal briefs. Accordingly, the individual plaintiffs are interested parties within the meaning of 19 U.S.C. § 1677(9)(C) and

have standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## **PROCEDURAL HISTORY**

5. Commerce published an antidumping duty order covering Isos from China in the *Federal Register* on June 24, 2005. *See Notice of Antidumping Duty Order: Chlorinated Isocyanurates from the People's Republic of China*, 70 Fed. Reg. 36561 (June 24, 2005) ("*Isos Order*").

6. In response to requests for an administrative review of the *Isos Order* by the Petitioners, Heze Huayi Chemical Co. Ltd. ("Huayi"), and Juancheng Kangtai Chemical Co., Ltd. ("Kangtai"), Commerce initiated an administrative review on August 9, 2022. *See Initiation of Antidumping and Countervailing Duty Administrative Review*, 87 Fed. Reg. 48459 (Aug. 9, 2022); *see also* Letter from Petitioners, "Request for Seventeenth Administrative Review" (June 30, 2022).

7. Because China is considered a non-market economy ("NME") in the context of antidumping duty proceedings, it was necessary for Commerce to select an appropriate surrogate market economy to value the factors of production pursuant to 19 U.S.C. § 1677b(c). On November 15, 2022, Commerce placed on the record a "non-exhaustive list of countries that Commerce has determined, based on per capita Gross National Income ('GNI'), is at the same level of economic development as China." *See* Commerce Memorandum, "Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information" (Nov. 15, 2022). Attached to this invitation to comment was another memorandum identifying six countries that Commerce considered to be at "the same" level of economic development as China. *See* Commerce Memorandum, "List of Surrogate Countries for Antidumping Investigations and Reviews from the People's Republic of China" (Aug. 19, 2022) ("GNI List"). Commerce provided "interested parties an opportunity to comment on the list as a starting point

for surrogate country selection… and to propose for consideration other countries that are at a level of economic development comparable to China." *Id.*

8. On November 22, 2022, Petitioners submitted comments on Commerce's GNI List and factual evidence showing that Mexico was comparable to China in terms of per capita GNI. *See* Letter from Petitioners, "Comments on Surrogate Country List" (Nov. 22, 2023). Petitioners requested that Commerce "consider Mexico as a potential surrogate country, primary surrogate, and source of representative financial ratios in this review." *Id.*

9. On December 2, 2022, Petitioners submitted comments and evidence concerning the selection of a primary surrogate country. *See* Letter from Petitioners, "Petitioners' Comments on Primary Surrogate Country Selection" (Dec. 2, 2022). Therein, Petitioners submitted evidence that neither Isos nor the essential raw materials for the production thereof were produced in any of the six countries identified on Commerce's GNI List. Petitioners also submitted evidence that Isos were produced in Mexico during the period of review ("POR").

10. On December 12, 2022, Petitioners submitted comments and evidence in rebuttal to Kangtai and Heze Huayi's ("Respondents") surrogate country selection submission. *See* Letter from Respondents, "Comments on Surrogate Countries" (Dec. 2, 2022); *see also* Letter from Petitioners, "Petitioners' Rebuttal Comments on Primary Surrogate Country Selection" (Dec. 12, 2022). Although Respondents claimed that Malaysia should be chosen as the primary surrogate country, Petitioners explained that Malaysia was not preferable to Mexico because record evidence established that Malaysia was not a producer of identical merchandise and prior Commerce decisions indicated that even the production of "comparable merchandise" in Malaysia was not "significant" for purposes of 19 U.S.C. § 1677b(c)(4)(B).

11. On December 19, 2022, Petitioners submitted additional evidence in advance of the preliminary results further demonstrating that Mexico was economically comparable to China and the only potential surrogate country that produced identical merchandise (*i.e.*, Isos). *See* Letter from Petitioners, "Petitioners' Initial Surrogate Value Data" (Dec. 19, 2022).

12. On July 7, 2023, Commerce published the preliminary results and preliminarily selected Romania as the primary surrogate country. *See Chlorinated Isocyanurates from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, 2021-2022*, 88 Fed. Reg. 43271 (July 7, 2023) ("*Preliminary Results*") and the accompanying Preliminary Decision Memorandum ("*PDM*"). Commerce found that, "with the exception of Panama, all other countries identified in the SC List had significant exports during the POR" of comparable merchandise. PDM at 24. Commerce then reasoned that because there were "usable SV data for two countries (Malaysia and Romania) that are at the same level of economic development as China and significant producers of comparable merchandise" it found "no compelling reason to depart from the SC List." *Id.* at 22.

13. On September 29, 2023, Petitioners submitted a case brief reviewing the record evidence demonstrating that none of the GNI List countries produced identical merchandise. *See* Letter from Petitioners, "Petitioner's Case Brief" at 5-8 (September 29, 2023). This evidence was not contested by Huayi or Kangtai or contradicted by any information on the record. Petitioners next reviewed the record evidence establishing that sodium hypochlorite was not "comparable" to Isos in terms of chemical composition, chlorine content, stability, form, other physical characteristics, end-uses, and production process. *Id.* at 8-23. This evidence was uncontested. Instead, Commerce relied on a prior decision based on a different record to find that sodium hypochlorite and Isos were "comparable merchandise." *Final IDM* at 6-7. Commerce also found

that Malaysia and Romania "were significant producers of both calcium hypochlorite and sodium hypochlorite" based solely on "export statistics" and not on any affirmative evidence of quantifiable production of calcium hypochlorite in Romania or of calcium or sodium hypochlorite in Malaysia. *Final IDM* at 7.

14. Following the filing of briefs by Petitioners and Respondents, Commerce issued the *Final Results* and *Final IDM* contested in this action. Commerce ultimately found "no basis upon which to consider Mexico" as the primary surrogate country and instead selected Romania, one of the countries identified on the GNI List. *Final IDM* at 18.

## **CLAIMS**

### Count 1

15. Paragraphs 1 through 14 of this Complaint are incorporated herein by reference.

16. Insofar as Commerce found that Mexico, as compared to other GNI list countries, was not at "the same" level of economic development as China for purposes of 19 U.S.C. § 1677b(c)(4)(A), its determination was not supported by substantial evidence on the administrative record.

### Count 2

17. Paragraphs 1 through 16 of this Complaint are incorporated herein by reference.

18. Insofar as Commerce found that Mexico, as compared to other GNI List countries, was not at a "comparable" level of economic development as China for purposes of 19 U.S.C. § 1677b(c)(4)(A), its determination was not supported by substantial evidence on the administrative record.

### Count 3

19. Paragraphs 1 through 18 of this Complaint are incorporated herein by reference.

20. Record evidence demonstrated that sodium hypochlorite had significantly different physical characteristics, end uses, and production processes than Isos. Yet, Commerce found that sodium hypochlorite was "comparable merchandise" for purposes of 19 U.S.C. § 1677b(c)(4)(B). This finding was not supported by substantial evidence on the record.

Count 4

21. Paragraphs 1 through 20 of this Complaint are incorporated herein by reference.

22. To identify the primary surrogate country for China, Commerce adopted a "Sequencing Procedure," explained in Policy Bulletin 04.1, that generally calls for the analysis of economic comparability before it considers merchandise comparability. *See Final IDM* at Comment 2. However, there is an exception to this "standard" sequencing procedure for merchandise that is "unique or unusual" within the meaning of Policy Bulletin 04.1.

23. The administrative record showed that the chemical composition of Isos or comparable merchandise requires the use of cyanuric acid, which imparts physical characteristics to Isos that are unique and are not found in sodium or calcium hypochlorite. The record contained unrebutted evidence that these physical characteristics impact the end use of Isos, such that the end uses of the subject merchandise are substantially different from the end uses of calcium or sodium hypochlorite. The record also showed that Chinese producers of Isos, as well as the petitioners and the Mexican producers of Isos, relied on a highly complex, multi-step production process to manufacture Isos. By comparison, the production of sodium hypochlorite involved far fewer processing steps, intermediate chemicals, overhead costs, investment, and labor. No contrary evidence was submitted on the record in this review.  As important, no evidence addressing these issues was identified in the record of prior decisions cited by Commerce or placed in the record in this review.

24. Commerce's determination that "parties have not provided sufficient record information to support a change from Commerce's prior decisions" was not supported by substantial record evidence. *PDM* at 27.

Count 5

25. Paragraphs 1 through 24 of this Complaint are incorporated herein by reference.

26. Separate from the issue whether Mexico should have been selected as the primary surrogate for China, the record included affirmative, undisputed evidence that Mexico was a significant producer of chlorinated isocyanurates. No inference was required to support this conclusion and neither Commerce nor the Respondents disputed that fact. This evidence included the 2021 financial statement of CYDSA, S.A. de C.V., a Mexican producer of chlorinated isos.

27. Despite CYDSA's production of identical merchandise produced by the Respondents and covered by the antidumping duty order, Commerce relied upon the financial statement of a Romanian producer that did not manufacture Isos for purposes of calculating surrogate financial ratios. *PDM* at 15-18. This determination was not supported by substantial evidence and otherwise inconsistent with the statute, regulations, and administrative and judicial precedent.

**REQUEST FOR JUDGMENT AND RELIEF**

WHEREFORE, Petitioners respectfully request that this Court:

28. Hold that Commerce's *Final Results* was not supported by substantial evidence or in accordance with law;

29. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

30. Grant such further relief as this Court deems just and proper.

Dated: March 1, 2024

Respectfully submitted,

/s/ James R. Cannon, Jr.

James R. Cannon, Jr.
Ulrika K. Swanson
Chase J. Dunn
**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone: (202) 567-2300
Email: jcannon@cassidylevy.com
*Counsel to Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation*