UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| BIO-LAB, INC., ET AL. <br>     Plaintiffs, <br><br> and <br><br> JUANCHENG KANGTAI CHEMICAL CO., LTD. <br> AND HEZE HUAYI CHEMICAL CO., LTD., <br>     Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br>     Defendant, <br><br> and <br><br> BIO-LAB, INC., ET AL; JUANCHENG KANGTAI <br> CHEMICAL CO., LTD. ET AL. <br>     Defendant-Intervenors and <br>     Consolidated Defendant-Intervenors.. | Consol. Ct No. 24-00024 |

## CONSOLIDATED PLAINTIFFS' REMAND COMMENTS

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinhui Wang
**The Inter-Global Trade Law Group, PLLC**
Suite 1101
1156 Fifteenth Street, N.W. 20005
Tel: (202) 868-0300
email: gmenegaz@igtlaw.com
*Counsel to Consolidated Plaintiffs*

Dated: September 3, 2025

## TABLE OF CONTENTS

I.    The Malaysian Labor Rate is the Best Available Information on the Record and Should Require Re-Consideration of Malaysia as the Primary Surrogate Country ................................................................................................................ 1

II.    Conclusion and Prayer for Relief ................................................................................ 5

## TABLE OF AUTHORITIES

**Cases**

*New Am. Keg v. United States*, No. 20 - 00008, 2024 Ct. Intl. Trade LEXIS 131 (Ct. Int'l Trade Nov. 25, 2024). ...................................................................................................................3

*QVD Food Co. v. United States*, 658 F.3d 1318 (Fed. Cir. 2011) ...................................................3

*Vinh Hoan Corp. v. United States*, 2015 Ct. Intl. Trade LEXIS 156, *81 (2015) ...........................4

Pursuant to Rule 56.2 (c)(1), Consolidated Plaintiffs Heze Hauyi Chemical Co., Ltd. ("Heze Huayi") and Juancheng Kangtai Chemical Co., Ltd. ("Kangtai") (collectively, "Consolidated Plaintiffs") hereby submit their remand comments. *See* Dep't Remand Results (August 4, 2025).

**I.     The Malaysian Labor Rate is the Best Available Information on the Record and Should Require Re-Consideration of Malaysia as the Primary Surrogate Country.**

The Court found that the Department had failed to address the issues with the Romanian labor rate, namely that the Romanian rate was for non-manufacturing sectors. The Court found that the Department "neglected to explain the reason that rate is nonetheless superior to the 'tainted' Malaysian rate that pertains to manufacturing." Slip Op.25-39 at 43. The Court specifically remanded for "Commerce to address consolidated plaintiffs' concerns and explain further or reconsider its selection of the Romanian labor data." *Id*. at 49. As explained further below, reconsidering the quality of the Romania labor data also called into question the reliance on the Romanian financial ratios and the selection of Romania overall.

Instead of addressing the issues with the Romanian labor rate on the record and whether the Department selected the best available information to value labor, the Department placed an alternative Romania labor rate on the record and relied on this rate. Respondents submit that the Department did not follow the Court's instructions. The Department did not consider the quality of the Romanian labor rate on the record as compared to the Malaysian labor rate of record. Instead, the Department side-stepped the issue and added a new Romanian labor rate to the record. This is contrary to the Department's normal practice and administrative policy that "the burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011).

1

The Department's placement of an alternative Romanian labor rate on the record is essentially the Department's admission that the Romanian labor rate that was on the record was not the best available information to value labor. Indeed, as the Court already ruled, the rate was not specific to manufacturing labor at all. Thus, as the court directed, then the Department needed to reconsider whether the Malaysian labor rate was superior to the Romanian labor rate. The Department did not do this on remand, but rather dismissed the Malaysian labor rate again for forced labor concerns citing to the *New American Keg Final Redetermination*. Remand Results at 21 & 35. As already explained in the briefing, that decision was concerning forced labor in the Malaysian electrical and electronics sector only while the labor rate on this record is for an entirely different sector, the chemical industry. Resp. R56.2 Br. at 21-22; *see also* Resp. Reply Br. at 7-8. The Court, fully aware of the *New American Keg Final Redetermination* decision still directed the Department to reconsider whether the Malaysian labor rate is actually superior to the Romanian labor rate—which again, the Department failed to do in this remand but rather just cited to forced labor concerns again. Remand Results at 36. We also submit that even in comparing this new Romanian ILO labor rate that the Department itself placed on the record, the Malaysian labor rate is still more specific. The Romanian ILO labor rate is for the overall manufacturing industry, while the Malaysia labor rate is specific to the chemical manufacturing industry.

    Critically, there was no reason for the Department to have reopened the record and placed the Romanian ILO data on the record. The record was not lacking a reliable labor rate because the Malaysian labor rate is reliable. The Malaysian labor rate is specific to the chemical manufacturing labor, an industry that has not been found to have forced labor concerns. In fact, in the very same *New American Keg* Court case relied upon by the Department, the Department

similarly tried to reopen the record and place an alternative ILO labor rate on the record. But the Court found this was an abuse of discretion when the record still contained a usable labor rate, citing specifically to the burden being on the parties to create a record:

> regulations provide that "[t]he Department obtains most of its factual information in antidumping . . . duty proceedings from submissions by interested parties during the course of the proceeding." 19 C.F.R. § 351.301(a). Thus, "Commerce generally does not consider untimely filed factual information." *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (citing 19 C.F.R. § 351.302(d)(1)). Nor does the agency reopen the record to admit evidence that it prefers, such as ILO data, when the parties have introduced otherwise-acceptable evidence that allows an accurate margin calculation. *See, e.g.*, *Multilayered Wood Flooring from the People's Republic of China*, 85 Fed. Reg. 78,118 (Dep't Commerce Dec. 3, 2020) and accompanying I&D Memo at 12 (selecting between two non-ILO sources placed on the record by interested parties and explaining that "[a]lthough Commerce stated a preference for ILO data, it did not preclude reliance on data from another source").
>
> As "[c]onstant reopening and supplementation of the record would lead to inefficiency and delay in final-ity," *Essar*, 678 F.3d at 1277, supplementation is permissible in "a small number of" circumstances. *Id.* One such circumstance is "when the underlying agency decision was based on 'inaccurate data' . . . ." *Id.* Because the Department made no showing that the Brazilian wage information on the record was inaccurate or otherwise unsuitable for calculation of Ningbo Master's margin, Commerce abused its discretion in reopening the record to use Mexican ILO wage data.

*New Am. Keg v. United States*, 2024 Ct. Intl. Trade LEXIS 11, *3-5 (also citing to *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011). The Malaysian labor rate can be relied upon, and thus opening the record for a new Romanian labor rate is an abuse of discretion, contrary to the Court's remand instructions, and contrary to the Department's normal practice of relying on the parties to develop the record.

Further, while the Court specifically withheld judgment on the Romanian financial ratio selection, the Court indicated still indicated that "[i]t is possible that Commerce's reevaluation of its selection of the Romanian labor data will lead Commerce to reconsider its determination that

the Romanian financial ratios constitute the best available information." Slip Op.25-39 at 45. Indeed, as argued before the Court, the quality of the Romanian labor rate on the original record undermines the Department's selection of Romania as the primary surrogate country. The Department relies on the country that sources the best available information. In light of the Romanian labor rate not being the best available information, the Department must reconsider its selection of Romania as the primary surrogate country. As argued before the Court, Romania has less quality financial data and lacks a reliable labor rate based on the original developed record, or at a minimum, still has a less quality labor rate if accepting the new Romania ILO. In contrast, Malaysia sources the best available information for financials and labor. Further, even though Court found that the Romanian chlorine value is not unreliable, the Malaysia chlorine value should at least be considered better for the reasons already briefed. Resp. R56.2 at 12-22. Malaysia is the country where a reasonable mind would have to conclude that the data is the "best available" to value Kangtai's and Heze's factors of production. *Vinh Hoan Corp. v. United States*, 2015 Ct. Intl. Trade LEXIS 156, *81 (2015) ("The best primary surrogate country in this case is that provides the best available information for most inputs is Indonesia.").

The Court should find it was not appropriate to reopen the record to supplement the Romanian ILO labor rate because the Department can rely upon the Malaysian labor rate already on the record. The Court should also find that the Department must reconsider its surrogate country decision in light of its apparent determination that the original Romanian labor rate on the record is unreliable.

4

## II.     Conclusion and Prayer for Relief

In light of the foregoing, the Department's Remand Results were not supported by substantial evidence or in accordance with the law.  Plaintiffs respectfully request that the Court remand this case for redetermination of the issues presented in this comment.

Respectfully submitted,

/s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Judith L. Holdsworth
Vivien Jinghui Wang[**]
**The Inter-Global Trade Law Group, PLLC**

Dated:  September 3, 2025            *Counsel for Consolidated Plaintiffs*

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

5

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **1,380** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz